Good morning. May I please support Lisa Brodiaga from San Benito, Texas, here on behalf of Mr. Ernesto Gonzalez-Segura. I would like to start by noting that this case was decided on summary judgment on points of law and points of law only, so the facts have not really been determined and there was no trial and he was not given the opportunity to set forth any things that would have been factual issues. So they are all presumed at this point to be as he alleged them during the course of the proceedings. This case involves a very who were, one of whom was the appellant's mother and the other of whom was the wife of the U.S. citizen's father. For clarity, I'd like to refer to them as the father, the mother, and the wife. The father and the wife were living in Texas, had a family, when for whatever reason the mother came to live with them. The father and the mother started up a relationship of which a child was born in Texas, the older brother of the appellant herein. The wife took a look at the baby and said, I know whose baby that is, that's my husband's baby, and so she threw the mother and the infant out and they went back to Mexico. The father, trying to do the right thing, bought a home for them in Mexico, but as a U.S. citizen it was difficult for him to register it in his name so it was registered in her name, but he's the only one who ever paid on it and the mother never worked and she and her growing family were totally dependent on the father. They had two more children together of which the appellant herein was the youngest, born in 1969. Around then it apparently became clear to the father that his health was not going to last much longer and he started to, again, to try to do the right thing to the extent he could and make provisions for both his Mexican family and his Texas family. In the meantime, he had been going back and forth, spending a lot of time in Mexico, a lot of time in Texas, and the record demonstrates that during the few years that he lived after the appellant was born, they bonded very closely. There's a beautiful picture in the record of him sleeping with the infant lying next to him on which he wrote on the back, me and my son Ernesto Gonzalez. There's another picture where Ernesto's a little bit older and he's there very proudly with him and a family member and there's a third picture. It's clear that he bonded to a great degree during the few years he was alive and well during the appellant's life. In 1960, it became clear to him apparently that his health was failing. One of the things that he did was to try to secure the property for the mother and his three children with her. But you said he bought it in her name. He bought it in her name, but he was the only one who had paid for it, so he did what would amount in this country to a quick claim deed. Right, but if it's in her name, why isn't it her property from the outset? Because somebody could challenge it, saying that she doesn't have any equity in it, it was all his equity. Not under American law, if the title is in your name, it's presumably yours, right? Well, he wasn't a lawyer, Judge, and he was trying to do the best he could by ensuring that any interest he had in it went to her and his three kids and he executed what would be, I would think, the equivalent of a quick claim deed in the United States, saying that, you know, I hereby give to her by name and the three of my interest in this, and he paid it off to make sure that it was all paid off. Now, he had registered the middle child, the first of the three born with this woman, was born in Texas. The second was born in Mexico. He registered him as his child, but he did not get around to registering Ernesto as his child. And as it became clear that his health was failing, the mother decided that she had to register him. And according to the decision of the Mexican judge who later on heard the case, when she went to the civil registry, she told them that the true father was a U.S. citizen, and they said, no, you need to register him in the name of your new husband, because she had recently remarried since he was really no longer able to support them, so she had obtained a new sponsor. That's around 1972, right? That's approximately 1972, that's correct. And in 1972, December of 72, when Ernesto was three and a half years old, he was registered at the instance of the Mexican civil registry as the child of his mother and her new husband. Now, fast forward many years later, he became a permanent resident, but got in trouble with the law, was deported, and in that process, he was told by a border patrol officer, I don't know why you're doing this, you're a U.S. citizen, your dad's a U.S. citizen, you need to go fix your papers. So he went back to Mexico and conducted a trial there, where he alleged, and the civil registry was a defendant in the case. They didn't appear, but they were a defendant, and the proceedings were evidentiary hearing, where it was determined that the initial record had been fraudulently filed. It was a rectification proceeding, a proceeding to correct the record, not an amendment as we know it, not a non-croton, but rectification, whereby the judge found that there had been a fraud and ordered the civil registry to correct it, ab initio, essentially. And so the civil registry complied, and they issued a new birth certificate with the appellant's true name, his true parentage, and the date that it was originally filed, which was 1972. So that's one of the documents on which he's relying. He's also relying on the court judgment, which was essentially itself, we believe, retroactive, saying that this, you know, we find that there was fraud committed, and in fact the true father is this man, Nicolás González, the U.S. citizen. The U.S. law says that if you're going to do this, you have to do it before you're 21 years old, and this occurred substantially after he was 21. So how do you argue and how do you get around that? Are there any exceptions to that? Is there any case law that allows an exception? Because we have this thing that says that you have to do it before you're 21 years old. Well, it says it has to be legitimated before you're 21, and there is a case, Judge, from this court, Bustamante-Guerrera, that left open the possibility that under some circumstances a foreign decree could be given retroactive effect. That case, they clearly concluded, did not deserve it, but they left open that possibility, and what the court said in, what this court said in that case was we need not and therefore do not rule out the possibility that some set of circumstances might exist in which we would recognize a non-proton amended divorce decree as sufficient to prove there it was a custody issue, sole legal custody. Now, the difference between non-proton and rectification, I think, is crucial in this context. If you look up rectification, both in the law dictionary and where it's used in the cases, and these are all in, a lot of this is in my brief, rectification is inherently ab initio. Non-proton can be for equitable reasons, for immigration reasons, or for whatever reason, but to correct a fraud or an error in the beginning is rectification, and the court then considered or continued in Bustamante that in a hypothetical case, there would be no differential treatment between, on the one hand, a minor child who was unquestionably in the sole legal custody of his naturalized parent from the outset, and on the other hand, one whose parent's original custody decree placed him in their joint legal custody of both of his parents, but who in actuality was in the sole legal custody of his one naturalized parent. Petitioner argues that he falls within the latter category and that it would be irrational to treat him differently than children in the former one, but Petitioner does not fall within the latter group. He has shown us no evidence that the amended decree is effective for purposes of federal immigration or naturalization law. On the contrary, the uncontradicted evidence confirms that the amended decree was brazenly obtained for the sole purpose of manipulating federal immigration law and had no legitimate state purpose whatsoever. Here, the legitimate state purpose was to correct a fraud that had occurred with the complicity of the Mexican Civil Registry in 1972, and that's what the Mexican court found and that's what they did, and that's the issue that this court left open in Bustamante-Guerrera. Now, with respect to the holographic will, that occurred while he was only a year old, and there the question is whether that was adequate. It met the substantive requirements for a holographic will under Mexican law, but not the procedural requirements. But the expert that was hired by the appellant showed that under the procedure in Mexico, there are procedures by which an unregistered, what they call a private will, can be formalized and recognized. And the expert also determined that Mexican law would recognize this holographic will as sufficient to prove paternity, even though it was not perhaps sufficient to transfer property, which was really, as Your Honor noted, didn't need transferring because it was in her name and it was just a question of demonstrating that he was giving any interest he might have to the mother of his three children and those three children. So the district court judge ruled that as a matter of law, there could be no exceptions for retroactivity, and Bustamante-Guerrera leaves that question open. So that's one of the issues that is before this court, where the Mexican court has done what it can to try to rectify a fraud by ordering ab initio registration with the true facts. And the issue before the Mexican court was to make certain that its records were correct. This was a legitimate state purpose on the part of the Mexican court. Couldn't they have gone and tried to get an American birth certificate? He wasn't born in the United States, Your Honor. Oh, I thought he was born on the U.S. side. No, his older brother was, but he was born in Mexico. He was born in Mexico. So it was the Mexican birth certificate or none at all. But there was not even a Mexican birth certificate. There was, but that's where the mother put the husband as the father rather than the true father because there's civil registry. According to the decree of the Mexican court, that was what should be done. Now, one other point I'd like to make. The government relies very heavily on matter of Cabrera that they claim says that 1409 requires an act of legitimation. However, matter of Cabrera overruled the case that had that language, and the statute does not require an act of legitimation. It only requires legitimation. The government was claiming that the acts that caused it had to occur before he was 21. That's not in the statute. And none of the cases that I have found construe 1409 as requiring an act of legitimation. And matter of Cabrera explicitly overruled matter of Reyes, which is the case where they got that language from. And we assert that it does not necessarily require an act of legitimation to occur before. Matter of Bustamante Cabrera leaves open the possibility under the proper circumstances of recognizing retroactively a foreign judgment that is done for legitimate foreign reasons to reflect the reality as it existed at that time, and that is the case that we have here. We believe that Mr. Gonzalez has a right and deserves the opportunity to prove up the allegations that he has made, to demonstrate that the purpose of 1409, which the district court correctly observed, was to show that they had the opportunity to bond when he was young. Clearly they did. You have these beautiful pictures in the record. And to show that it was a fraud that was committed when the birth record was originally filed. And to also show that the holographic will under Mexican civil procedure would have been considered adequate in the opinion of his expert to demonstrate paternity and to legitimize him by recognizing his paternity. Thank you very much. Yes, ma'am. Okay. Ms. Nardone. May it please the court. My name is Suzanne Nardone, attorney for the respondent of the United States. As this court observed in Bustamante Cabrera, the same case that the petitioner is citing here, naturalization is available only as provided by acts of Congress, and even then only in strict compliance with the terms of such acts. In a naturalization case. If we back off from the trees and look at the forest, this is a really sympathetic case, isn't it? Well, your honor, it depends on the circumstances of what you're looking at and what you consider to be sympathetic about the case. I mean, the question of whether or not sympathetic is really not, doesn't really come into play here. The question is ultimately, does the circumstance of this case fit the requirements of the naturalization provisions as they existed at the time of the petitioner's birth? And the government has asserted here that it simply does not. As a matter of law, there hasn't been a showing that legitimation occurred in this case prior to the age of 21 as required by the law. And here the district court properly found, as a matter of law, the petitioner failed to establish an essential element of his naturalization claim, which was that his legitimation occurred prior to the age of 21 under former INA 309A. As the district court found, the plain language of former INA 309A provides that legitimation must occur while a child is under the age of 21. And it does not contemplate retroactivity. Contrary to the petitioner's argument here, there is a significant amount of case law out there that discusses the retroactivity, and specifically with regard to this provision. For example, the District of Columbia Circuit Court found in Miller v. Christopher that a very similar effort at applying a Texas state paternity decree retroactively in the amended version of 309A, which has very similar language, the court found that to allow Mr. Miller to gain retroactive benefit of a state court judgment would undercut Congress's clearly stated requirements and would have the effect of establishing citizenship in ways that are inconsistent with federal legislation. And that case is very similar to the case here. Moreover, as the district court found, there has been a lot of discussion in the Supreme Court about this particular provision that was found both in former 309A and in the current version. In Wynne v. INS 533 U.S. 53, the Supreme Court discussed in 2001 the fact that the intent behind the 21-year age requirement was to allow a U.S. citizen and his non-citizen child to establish strong connections during the age of minority. And although petitioner argues here that this judgment, this court judgment, somehow recognized that these bonds existed at this young age, the Supreme Court also observed in Miller v. Albright in the context of an equal protection challenge that there were additional purposes to the minority recognition by the father, which were to ensure that there was reliable evidence of legitimation and also to deter against fraud with regard to legitimation. So this provision has been discussed many times in the Supreme Court and its legitimate purpose has been discussed. And it's simply incorrect for the petitioner here to claim that there's no purpose to this under 21 requirement that's very specifically stated in the plain language of the nationality regulation. I don't hear Ms. Borgiaga as saying that there's no purpose to the 21-year, but I think she's saying that there may be reason to make an exception to that in an individual case and she's asking just to go to trial so all the facts can be carefully examined. And I understand that she's making the argument with regard to this court's holding in Bustamante Barrera, but it's also important for this court to recognize that in addition to that language that she cites, in that case they also discuss the fact that relying on an unprotunct order, such as the one here, would open the floodgates for abuse with regard to these types of federal laws and create loopholes in immigration laws based on perceived equity or fairness because simply the idea that a father could have been found to have legitimated his child during the age of minority when he actually died when that child was five years old and this court rendered a judgment in 2007 when the petitioner was 38 years old to somehow find that that fits either even the spirit of the regulation. It simply does not. And the petitioner argues that there's been no indication in the law that there needs to be some type of act of legitimation. That is also incorrect. As I mentioned in Miller v. Albright, the Supreme Court discussed the fact that there does need to be a formal act and a formal act of legitimation is clearly required by the law and that it needs either to be acknowledgement or an adjudication by a court. And in this case, yes, there was an adjudication by a court and as the district court found, certainly that adjudication may now have legitimated the petitioner for purposes of Mexican law retroactively to the date of either his birth or to the date of the filing of the birth certificate, but that's not the question here. The question here is, does that somehow serve as an act of legitimation that occurred while he was a minor? And the district court probably found, the government would argue, that it does not because this act did not happen when he was a minor and indeed the judgment itself that petitioner relies on here doesn't even discuss any type of act that occurred by the father. There's just sort of a very secondhand discussion in the judgment, the Mexican judgment, of the types of contacts that maybe this individual had with the child during that time. Well, that doesn't mean it doesn't stand for what it stands for, which is he was the father, right? Well, it stands for the fact that he's been... I mean, the federal law doesn't require more than that, does it? Well, but it does require, the government would argue, it does require clearly under... If the paternity statute 1409B, if the paternity of such child is established at any time while under the age of 21, but the point is paternity of such child and the decree says he's the father, right? But it specifically states while they were a child and that is a language that has been found to be significant both by the Supreme Court and... I'm not talking about the timing. You were making the argument, I thought, that this decree, this rectification, did not necessarily establish paternity because the father didn't do something more. Of course, he was dead, but I'm saying that you can't go behind that judicial decree. You can criticize the procedure and the significance. Yes, Your Honor, yes. The decree itself did establish... What about the holographic statement? So, with regard to the statement, the holographic will, as an initial matter, the government would argue that the petitioners have waived the arguments that they're putting forth to the court because none of these arguments were discussed or addressed in the district court's decision. And the reason that they were not addressed is because they were raised after... So, the expert testimony that the petitioners are relying on here, the report of San Miguel, was actually raised after the district court had... I'm sorry, after the petitioner had filed motions... The government had filed motions for summary judgment and after the district court had requested briefs on the issue of the will. Only then did the petitioner ask for leave from the court to appoint an expert on the issue of the will. However, the district court rendered its decision before ever granting the motion for leave to designate the expert because this was far, far out of time. We had already gone through a whole process of discovery. We had already gone through briefing on the issue of the will. And it was never... This expert testimony that's been completely relied on wholesale by the petitioner in this brief was never discussed by the district court. So, it's the government's argument here that this argument was completely waived, first of all. Second of all, if the court were to look at this argument by the petitioner, the government would argue that the court should find that the district court correctly found, based on its own review of law and on a review of the government's expert witness, which is at 1031 in the record, that there were a number of requirements for establishing a holographic will. And, again, that's all set forth at 1031 in the record. And, indeed, it actually found that there were about 11 requirements. The government then specifically identified a number of requirements that were not met, and the district court found that these were not disputed in any way by the petitioner. Rather, they stuck to their argument that there were only two requirements for establishing a holographic will. And the district court was not persuaded and found that, in this regard, that the petitioner did not establish that this was actually a holographic will under Section 4 of Article 379 of the Civil Code of Tom Pius. Further, even if the court were to consider the expert report that was submitted on appeal, for the first time on appeal, it's not clear how these provisions somehow satisfy the formation of a will under Article 379. These are civil procedure provisions that have been submitted, and they concern the weight that's to report it to certain evidence, but they don't... The petitioners have not in any way addressed how their document that they have has satisfied all of the formation requirements that were identified by the district court. And nor have they established that the requirements set forth... Nor have they identified whether or not these other requirements somehow that we have argued are required are not necessary for the formation of the will as our expert has set forth in the record. In conclusion, the court should find that the district court properly concluded that the petitioner failed to establish his legitimation prior to the age of 21 for purposes of Form 309A, either through the Mexican court judgment in 2007 or through the 1970 paragraph, and properly awarded summary judgment in favor of the government. Any further questions? I don't think so. Thank you. Your Honor, very briefly, taking matters in reverse order, as far as the expert report is concerned, the plaintiff appellant here did file a motion for leave to file that expert report, attach the expert report to that motion. That motion was denied as moot. In other words, the court never ruled on whether it should be considered or not because I've already made up my mind. So it was denied as moot, but a proper motion was made. And as far as the procedural, the 11 requirements, yes, but the first 4 are the substantive and the other 7 are the procedural ones. And the 4 substantive ones are the ones that he complied with and the procedural ones are the ones that his expert opined could be either done later, because one of the provisions allows you to go to court with what's called a private will, which is what this was, and have it recognized, or that even if it was not adequate procedurally for passing property, it was adequate because the substantive requirements were filled for demonstrating proving legitimacy. Now, as to the government's argument regarding naturalization, I beg to disagree because as the Supreme Court held in Miller, there are 2 means of becoming a U.S. citizen, by birth and by naturalization. Naturalization is defined in the Act as citizenship acquired after birth. And that's called derived citizenship. That's when your parents naturalized and you get naturalization because they naturalized. That's derivative citizenship. Acquired citizenship happens at birth. It's not naturalization. And that is the type of citizenship we're talking about here. He acquired citizenship at birth through his U.S. citizen father and what we are now attempting to do is to document that he is a U.S. citizen as the Border Patrol agent told him as he was being deported. Well, when did the Border Patrol agent tell him that? As he was being deported. I know, but he's been deported more than once, hasn't he? That I don't know, Judge. I was not trial counsel so I don't know exactly when. That's one of the allegations. Whether the Border Patrol agent was correct or not is what we're trying to determine now but that's what started it for him because he hadn't even thought of it before that because he's not a lawyer. He's just a hapless American citizen dealing drugs and the Border Patrol said hey, you're American, you're not from Mexico. This is a summary judgment case so obviously normally someone who loses on summary judgment claims that there's a disputed issue of material fact and therefore wasn't ready for summary judgment and should have gone to trial. So identify for us specifically what disputed issues of material fact you think there are that would defeat the operation of law that is incorporated in the summary judgment. Material fact or law, Your Honor. The legal arguments are the Mexican procedure the provisions of the Mexican Code of Civil Procedure that his expert identified as being sufficient to make this will adequate for purposes of legitimation. So that is a mixed question of law and fact I think and that's something that was acknowledged that the court did not even consider the court did not consider his expert opinion at all because she ruled as a matter of law that it wouldn't help and therefore denied the motion to introduce it as moot. In terms of material fact other than that I don't think there is much the government was disputing the bonds between them whether that fulfilled the requirement and also the other requirements that she was referring to that are matters that are the policy behind it that they were also fulfilled and that the huge difference between a non-protunct judgment which is what you had in the D.C. case she cited and an ab initio, a rectification this court and all the courts have been very clear that rectification is inherently ab initio, it's inherently retroactive this is not a question of something that well you know I think it ought to be retroactive because that would be in the interest of justice but this is where this is the issue that this court left open in Bustamante of under the proper facts can we give credence to a foreign judgment that was created for purposes of that foreign court that fulfilled some state purpose of that foreign court and was not just done to manipulate the U.S. laws and that's what we have here thank you very much